IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>CHRISTOPHER BLACK CANNON,<br><br>   Debtor, | **MEMORANDUM DECISION & ORDER**<br><br><br>Case No. 2:13-CV-01044<br><br>Judge Robert J. Shelby |
| CHRISTOPHER BLACK CANNON,<br><br>   Debtor-Appellant,<br><br>  v.<br><br>PNC BANK, N.A., and KEVIN R. ANDERSON, Trustee,<br><br>   Appellees. | |

  Christopher Black Cannon sought bankruptcy protection, claiming that he qualified to petition for relief under Chapter 13 of the United States Bankruptcy Code. The Trustee and PNC Bank, N.A. disagreed. After inviting and receiving briefing on the issue, the bankruptcy court found that Mr. Cannon had too much debt to qualify for Chapter 13 and dismissed his case. Mr. Cannon now appeals that decision. After careful consideration of the briefing and relevant legal authorities, the court **AFFIRMS** the decision of the bankruptcy court for the reasons set forth below.

**BACKGROUND & FACTUAL FINDINGS**

On April 22, 2013, Mr. Cannon filed a petition for a Chapter 13 bankruptcy. Mr. Cannon sought bankruptcy protection in part because he believed that PNC Bank was making unlawful attempts to foreclose on his loan after inducing him into missing monthly payments. Mr. Cannon considered filing a lawsuit in state court to resolve this issue, but chose instead to file his bankruptcy case. Following the filing of Mr. Cannon's petition, the bankruptcy court scheduled a Section 341 meeting of creditors on May 31, 2013 and a plan confirmation hearing on July 9, 2013.

After some delay,[1] Mr. Cannon filed Schedules and a Statement of Financial Affairs under penalty of perjury. On Schedule A, Mr. Cannon represented that he was the half-owner of a family residence on which there was a secured claim in the amount of $1,676,986.81. And on Schedule D, Mr. Cannon listed PNC Bank as a servicer for an unknown creditor on two mortgages on the family residence and a secured claim on a condominium owned by 714 Terrace Falls Condo LLC. The total amount of these claims, without deducting the value of collateral, was $1,859,986.81. The unsecured amount was listed as $242,786.00. Mr. Cannon averred that the two mortgages on the family residence were noncontingent, unliquidated, and disputed.[2]

Mr. Cannon also provided information on his expenditures and income. On Schedule I, Mr. Cannon stated that his combined average monthly income was $20,310.00. Mr. Cannon also represented that his monthly rent or mortgage payment was $11,285.00.

---

[1] On May 17, 2013, the Trustee moved to dismiss because Mr. Cannon had failed to file his Statement of Financial Affairs and Schedules, as required by Local Rules and the Federal Rules of Bankruptcy Procedure. Trustee Appx. 32. The Trustee noted that Mr. Cannon's failure to abide by the rules prevented the Trustee from conducting a meaningful evaluation of Mr. Cannon's case before the Section 341 meeting. *Id.* at 33. Mr. Cannon finally filed these documents on May 30, 2013, the day before the scheduled Section 341 meeting.

[2] Trustee App. 51. The claim on the first mortgage was listed as $1,385,155.56, while the claim on the second mortgage was listed as $291,831.25 with an unsecured portion of $59,786.00.

On May 31, 2013, the day of the Section 341 meeting, Mr. Cannon filed an *ex parte* motion to reschedule. And on July 9, 2013, the date originally intended for Mr. Cannon's plan confirmation hearing, the Trustee informed the court that Mr. Cannon might not meet the debt requirements of Chapter 13. PNC Bank had not yet filed a proof of claim for the mortgages. The bankruptcy court rescheduled the Section 341 meeting and moved the plan confirmation hearing to October 22, 2013. The bankruptcy court also set a hearing on October 21, 2013 to discuss Mr. Cannon's qualifications under Chapter 13. The bankruptcy court allowed discovery and ordered that briefing on Mr. Cannon's eligibility be submitted by October 1, 2013.

Prior to the rescheduled hearings, PNC Bank filed several claims and moved to dismiss the case. On June 27, 2013, PNC Bank filed Claim No. 3-1, asserting a junior lien on Mr. Cannon's family residence in the amount of $292,488.39, with a prepetition arrearage claim of $1,835.29. PNC Bank also filed an amended Claim No. 5-1, asserting a secured claim on the family residence in the amount of $1,799,045.44, as well as a prepetition arrearage claim of $511,325.59. Ninety-five days before the rescheduled plan confirmation hearing, PNC Bank filed its Motion to Dismiss, arguing that Mr. Cannon's debts exceeded the limits set forth in Section 109(e) of the Bankruptcy Code.[3] The Trustee filed a similar Motion to Dismiss on August 29, 2013, fifty-four days before the plan confirmation hearing.[4]

The bankruptcy court conducted an evidentiary hearing on October 21, 2013. At the hearing, PNC Bank called Mr. Cannon as a witness and introduced the original promissory note as Exhibit 1, showing an original balance of $1,495.000.00. Mr. Cannon reviewed the note and

---

[3] PNC App. 1.

[4] Trustee App. 91-93.

testified that it bore his signature. The bankruptcy court also appears to have found that PNC Bank's proofs of claim were not filed in bad faith.[5]

The bankruptcy court found that Mr. Cannon's mortgages constituted debts that were noncontingent, liquidated, and in excess of $1,149,525.00. Because these debts exceeded the limit set forth in Section 109(e), the bankruptcy court concluded that Mr. Cannon's case should be dismissed.[6] In doing so, the bankruptcy court rejected Mr. Cannon's arguments that the timing of the motions to dismiss, PNC Bank's status as a servicer, and principles of due process required the bankruptcy court to deny the Trustee's and PNC Bank's motions.[7]

## JURISDICTION

The court has jurisdiction over Mr. Cannon's appeal under 28 U.S.C. § 158(a) and Rules 8001 and 8002 of the Federal Rules of Bankruptcy Procedure.

## DISCUSSION

### I. STANDARD OF REVIEW

The court is instructed to review "the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard."[8] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been made."[9]

---

[5] Trustee App. 104.

[6] Trustee App. 94-117.

[7] *Id.*

[8] *Erickson v. Ford Motor Credit Co.*, No. 2:05-CV-987 TS, 2006 WL 528414 (D. Utah Feb. 10, 2006) (quoting *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002)); *In re Young*, 91 F.3d 1367, 1370 (10th Cir. 1996); Fed. R. Bankr. P. 8013.

[9] *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002) (quoting *In re Peterson Distrib., Inc.*, 82 F.3d 956, 959 (10th Cir. 1996)).

## II. TIMELINESS OF THE MOTIONS TO DISMISS

As a threshold matter, Mr. Cannon argues that the motions to dismiss filed by PNC Bank and the Trustee should have been barred under Local Rule 2083-1(h).[10] Mr. Cannon believes that the Trustee and PNC Bank waived any challenge to his eligibility under Section 109(e) because they failed to file their respective motions at least seven days prior to the original date set for the plan confirmation hearing. The court rejects this argument for two reasons.

First, the Tenth Circuit has observed that considerable deference ought to be accorded to lower courts' "interpretation and application of their own rules of practice and procedure."[11] At the same time, local rules of practice "have the force and effect of law, and are binding upon the parties."[12] For this reason, courts should closely adhere to local rules when doing so furthers the underlying policies.[13] Here, however, the bankruptcy court's interpretation of Local Rule 2083-1(h) not only fell within the bounds of its discretion but also was entirely consistent with its underlying policies, the Bankruptcy Rules of Civil Procedure, and the Bankruptcy Code.[14]

Second, although courts may promulgate rules to govern the practices and procedures of a bankruptcy case, any local rule must be consistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.[15] For this reason, a local bankruptcy rule should not "abridge, enlarge, or modify any substantive right."[16] And a "local rule which purports to limit a practice

---

[10] Bankr. D. Ut. LBR 2083-1(h) ("A party must file and serve a motion to dismiss a chapter 13 case under § 109(e) of the Code not later than 7 days before the date set on Official Form 9I for the plan confirmation hearing. Such motion will be heard at the plan confirmation hearing, unless the court orders otherwise.").

[11] *Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980); *see, e.g.*, *In re Rivermeadows Associates, Ltd.*, 205 B.R. 264, 269 (B.A.P. 10th Cir. 1997).

[12] *Smith v. Ford Motor Co.*, 626 F.2d 784, 796 (10th Cir. 1980).

[13] *Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1221, 1224 (D.N.M. 2011).

[14] *See* Trustee App. 98-100 (setting forth basis for permitting additional briefing).

[15] *In re Rivermeadows Associates, Ltd.*, 205 B.R. 264, 269 (B.A.P. 10th Cir. 1997).

[16] *In re King Res. Co.*, 651 F.2d 1349, 1351 (10th Cir. 1981).

allowed by the Federal Rules of Bankruptcy Procedure is invalid."[17] Here, Mr. Cannon urges an application of Local Rule 2083-1(h) that raises a serious possibility of conflict with a statutory enactment intended to impose limits on eligibility under Chapter 13. This is especially problematic where, as here, Mr. Cannon delayed filing his Schedules, requested that the Section 341 Meeting be postponed, and requested the rescheduling of the plan confirmation hearing.[18] In this respect, Mr. Cannon's interpretation of Local Rule 2083-1(h) would allow a debtor to unduly delay the Section 341 Meeting until after the original confirmation date in order to prevent creditors and the trustee from understanding the factual basis of a debtor's eligibility, which may in turn operate to bar parties from challenging eligibility in a timely matter. To this extent, Mr. Cannon's proposed bright-line application of Local Rule 2083-1(h) is inconsistent with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

The court concludes the bankruptcy court did not err in inviting the parties to brief Mr. Cannon's eligibility after the issue was raised at the original confirmation hearing date or in holding an evidentiary hearing prior to the actual confirmation hearing.

### III. PNC BANK'S STANDING

Mr. Cannon next argues that PNC Bank lacked standing to bring its motion to dismiss. Mr. Cannon believes that PNC Bank should have been required to prove that it owned the debt in its proof of claim before being permitted to submit evidence to the bankruptcy court. For this reason, Mr. Cannon believes that PNC Bank's proof of claims and evidence should be stricken.

---

[17] *In re Rivermeadows Associates, Ltd.*, 205 B.R. 264, 269 (B.A.P. 10th Cir. 1997) (citing *In re Otasco, Inc.*, 981 F.2d 1166, 1167 (10th Cir. 1992)).

[18] Trustee App. 76-77.

6

To assert standing under Article III, a party must show an "injury in fact" that is "fairly traceable" to the acts of the opposing party and likely to be redressed by a favorable decision.[19]

The court concludes that PNC Bank had standing to submit its proof of claims, file its motion to dismiss, and participate in an evidentiary hearing on that issue. Actual ownership is not dispositive in this case.[20] Here, PNC Bank is entitled to present a proof of claim and challenge eligibility as a servicer of the mortgage, which status gives it a pecuniary interest in collecting payments under the terms of the note and deed of trust.[21] And as a holder of an instrument, PNC Bank was entitled to enforce the note associated with the first mortgage on Mr. Cannon's family residence, in part because a note endorsed in blank is enforceable by the holder under Utah law.[22] Finally, PNC Bank's proofs of claim meet the requirements of Rule 3001(c) and are entitled to be treated as "prima facie evidence of the validity and amount of the claim."[23] Together, these facts demonstrate that PNC Bank presented a legally sufficient injury, fairly traceable to Mr. Cannon, which could be redressed through the bankruptcy proceeding.[24]

But even if PNC Bank lacked standing, the Trustee also moved to dismiss for nearly identical reasons. Accordingly, the court concludes that Mr. Cannon's eligibility under Chapter 13 was properly raised in the bankruptcy court. The court now turns to that issue.

---

[19] *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 181 (2000)).

[20] *In re Eads*, 417 B.R. 728, 739 (Bankr. E.D. Tex. 2009) ("Many courts have held that a mortgage servicer has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage.").

[21] *See In re Veal*, 450 B.R. 897, 920 (B.A.P. 9th Cir. 2011) (discussing circumstances under which a servicer had standing to assert a proof of claim).

[22] Utah Code Ann. §§ 70A-1a-201(2)(u), 70A-3-205(2), 70A-3-301 (2013); *In re Rinaldi*, 487 B.R. 516, 528 (Bankr. E.D. Wis. 2013).

[23] Fed. R. Bankr. P. 3001(f). *Compare* Trustee App. 119-97, *with* Fed. R. Bank. R. 3001(c).

[24] *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

## IV. CHAPTER 13 ELIGIBILITY

Mr. Cannon raises on appeal a series of issues relating to Chapter 13 eligibility.[25] These issues strike at a single question: whether the bankruptcy court erred as a matter of law in determining that Mr. Cannon's debts exceeded the limitations set forth in Section 109(e) of the Bankruptcy Code. For the reasons below, the court concludes that Mr. Cannon is ineligible for Chapter 13 protection.[26]

Congress intended to limit the availability of Chapter 13. To do so, it adopted statutory limits on the amount of debt an individual could carry and still qualify for Chapter 13 protection. "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 . . . may be a debtor under chapter 13 of this title."[27] On appeal, Mr. Cannon asks the court to reconsider the bankruptcy court's finding that his noncontingent, liquidated, and secured debt exceeded the $1,149,525 debt cap.

A debt is noncontingent "where all events that cause liability to arise occur pre-petition. It is only where some future event must transpire before liability arises that a debt is contingent."[28] In this case, none of the parties seriously contend that Mr. Cannon's mortgages are contingent or unsecured. In point of fact, Mr. Cannon affirmatively represented that the claims on his real

---

[25] Dkt. No. 20, at 5-9.

[26] Mr. Cannon failed to file an appendix as required by DUCivR 83-7.9(d)(2). A failure to provide an appellate court with an adequate record for evaluating the lower court's decisions may constitute an independent reason for affirming the lower court's order. *In re Rambo*, 132 F.3d 43 (10th Cir. 1997); *see also In re Pepper*, No. CO 05 051, 2006 WL 775121 (10th Cir. BAP Mar. 28, 2006) (concluding failure to include transcript and exhibits required summary affirmance). This is especially true where, as here, Mr. Cannon describes hearings, characterizes findings, and discusses exhibits, while at the same time declining to provide an appendix that contains transcripts or copies of exhibits. Because Mr. Cannon has failed to provide a record that would permit this court to fully evaluate the findings of the bankruptcy court, the court concludes that his failure to file an appendix as required by DUCivR 83-7.9(d)(2) is a separate and independent basis for affirming the bankruptcy court's order.

[27] 11 U.S.C. § 109(e).

[28] *In re Adams*, 373 B.R. 116, 119-20 (B.A.P. 10th Cir. 2007).

property were noncontingent and secured.[29]  Accordingly, the central issue is whether the claims referenced in Mr. Cannon's Schedules and PNC Bank's proofs of claim are liquidated.

The Bankruptcy Code does not contain a definition for the term "liquidated."[30]  Viewed broadly, a debt is liquidated when its value is easily ascertainable and unliquidated when its value is uncertain, vague, or depends on the "future exercise of discretion."[31]  Courts generally hold "that a debt is liquidated . . . when the claim is determinable by reference to an agreement or by a simple computation."[32]  At the same time, courts often note that the "concept of a liquidated debt relate[s] to the amount of liability, not the existence of liability."[33]  Because a bankruptcy court must make an eligibility determination at the outset of the case based on limited evidence,[34] "the overwhelming body of precedent holds that a dispute regarding liability on a claim is insufficient to render a claim unliquidated."[35]

In the Tenth Circuit, a bankruptcy court's "key factor for determining whether a debt is liquidated or unliquidated is whether the debt is subject to a simple mathematical computation or ascertainable by reference to an agreement."[36]  For this reason, "it is appropriate for a court to rely upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith."[37]  While total reliance on either the creditor's proofs of claim or the debtor's

---

[29] Trustee App. 44, 51.

[30] *In re Adams*, 373 B.R. 116, 119 (B.A.P. 10th Cir. 2007).

[31] *In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997).

[32] *In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) (internal quotation marks and citation omitted).

[33] *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir. 1996) ("A liquidated debt is that which has been made certain as to amount due by agreement of the parties or by operation of law.").

[34] *See In re Barcal*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997) (discussing purpose of Chapter 13).

[35] *In re Adams*, 373 B.R. 116, 120 (B.A.P. 10th Cir. 2007) (citing cases).

[36] *In re Adams*, 373 B.R. 116, 120 (B.A.P. 10th Cir. 2007).

[37] *In re Adams*, 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007) (quoting *In re Barcal*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997)).

9

filings is ill-advised, a "canvass and review" of these papers, as well as any evidence offered by the debtor or creditors, will aid a court in determining "whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits."[38]

In this case, there are two competing views of Mr. Cannon's debt. Mr. Cannon maintains that the secured debts on his real property are disputed and therefore unliquidated. In contrast, the Trustee and PNC Bank maintain that Mr. Cannon's Schedules, PNC Bank's proofs of claim, a promissory note, and Mr. Cannon's admissions during the bankruptcy court's evidentiary hearing demonstrate that Mr. Cannon's liquidated debts exceed the statutory threshold.

After careful consideration, the court concludes Mr. Cannon's noncontingent, liquidated, and secured debts exceed $1,149,525 for two reasons. First, the bankruptcy court found that PNC Bank filed its proofs of claims in good faith.[39] Claim 5-1, in particular, contains a deed of trust and promissory note—both of which were signed by Mr. Cannon. Claim 5-1, in other words, shows an amount of debt that is not only "easily ascertainable" from the face of the two agreements but also exceeds the statutory limit.[40] Second, Mr. Cannon appears to have testified that he signed the $1,495,000 promissory note associated with his primary mortgage and held by

---

[38] *In re Adams*, 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007) (quoting *In re Barcal*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997)).

[39] This appears to be a factual finding of the bankruptcy court, which is reviewed for clear error. In his brief, Mr. Cannon asserts that there was no showing that his own filings were in bad faith. Dkt. No. 20. The bankruptcy court does not appear to have made a finding one way or the other. Instead, the bankruptcy court appears to have assumed without expressly stating that Mr. Cannon's Schedules were filed in good faith, considered these Schedules in conjunction with PNC Bank's good-faith filings, and then decided that the disputed claims qualified as liquidated debt. For this reason, Mr. Cannon's "good faith" argument does not support reversal.

[40] PNC Bank's proofs of claims, which described secured claims against Mr. Cannon's real property, total $2,627,150.46. Trustee App. 119-97. The principal owed on Claim 5-2, standing alone, exceeds the debt limit in Section 109(e). *Id.* at 136; *see also* Fed. R. Bankr. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

10

PNC Bank. When this testimony is considered in conjunction with Mr. Cannon's Schedules[41] and PNC Bank's proofs of claim,[42] the court must conclude that Mr. Cannon's obligations are sufficiently determinable to constitute liquidated debt well in excess of the statutory limit of $1,149,525.[43] Accordingly, the bankruptcy court correctly dismissed his case.

Mr. Cannon, however, raises three arguments, none of which provide a basis for reversing the bankruptcy court's well-reasoned consideration of the evidence or its application of law.

First, Mr. Cannon argues that the bankruptcy court committed reversible error by relying on the disputed claims set out in Mr. Cannon's Schedules.[44] Mr. Cannon contends that because debt is a narrower concept than claim, a debtor's acknowledgement of the existence of a disputed claim does not automatically count as a liquidated debt within the meaning of Section 109(e).[45] Mr. Cannon is correct in observing that debt and claim may have different meanings under the Bankruptcy Code. But this does not mean that a debtor's acknowledgement of a possible claim, whether disputed or not, is irrelevant under Section 109(e). Although a claim contained in a Statement of Financial Affairs or Schedules should not be dispositive of the issue—especially when the debtor disputes the claim—the debtor's sworn statements are certainly relevant to the question of whether a debt exists and whether it is liquidated. In this case, the bankruptcy court

---

[41] As discussed at greater length below, the claims contained in Mr. Cannon's Schedules are probative but not dispositive of the amount of debt. Schedule A describes a secured claim on Mr. Cannon's family residence in the amount of $1,676,986.81. Schedule D describe secured claims on his real estate, without deducting the value of the collateral, in the amount of $1,859,986.81. Trustee App. 44, 51.

[42] *Supra* note 40; Trustee App. 119-97.

[43] 11 U.S.C. § 109(e).

[44] Dkt. No. 20, at 19-24.

[45] Dkt. No. 20, at 19-24.

11

appears to have properly considered Mr. Cannon's Schedules in conjunction with the promissory note, proofs of claim, and Mr. Cannon's testimony.[46]

Second, Mr. Cannon argues that the bankruptcy court could not determine the amount of debt because his debt was not readily determinable through a simple mathematical formula.[47] Mr. Cannon maintains that the bankruptcy court lacked sufficient evidence to calculate the exact amount owed because neither the Trustee nor PNC Bank presented specific and detailed history of the loan, payments, penalties, or compliance with the terms of the contract.[48] Mr. Cannon's argument is unpersuasive. Under Mr. Cannon's approach, it would be nearly impossible for a court to determine a debtor's eligibility at the outset of the case.[49] Instead, the parties and the court would be required to litigate claims to their conclusion in order to determine a threshold issue. A much better approach, entirely consistent with the unique aspects of Chapter 13,[50] is for the court to conduct a "canvass and review" of filings of the debtor and creditors. This facilitates a timely judicial determination, while at the same time permitting each party to adequately brief and argue the issue of eligibility. That is precisely what occurred here, where the bankruptcy court considered whether PNC Bank filed its proofs of claim in a manner consistent with Rule

---

[46] Similarly, the mere fact that Mr. Cannon disputed the existence of a debt is not dispositive. Otherwise, a debtor could subvert the limitations imposed on Chapter 13 cases and simultaneously seek a discharge for debts that well exceed the statutory threshold. *See also* Trustee App. 110-13.

[47] Dkt. No. 20, at 25-26.

[48] Dkt. No. 20, at 25-26; *see also In re Adams*, 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007) ("In [evaluating eligibility], however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestioningly on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor."); *In re Glance*, 487 F.3d 317, 321 (6th Cir. 2007) (equating mortgage liens with liquidated debts).

[49] *See, e.g.*, Dkt. No. 20, at 25-26 ("Outstanding home loan balances are not so 'simple.' One could not successfully testify on the stand as to an amount owed on the home loan by merely claiming it is owed. Evidence would have to be introduced as to payments, etc., and then an expert would need to do full-blown amortization schedules based on the actual history of the loan.").

[50] *In re Pearson*, 773 F.2d 751, 753-54 (6th Cir. 1985); *cf. In re Perkins*, 381 B.R. 530, 535 (Bankr. S.D. Ill. 2007).

12

3001,[51] concluded that the claims were made in good faith,[52] and mathematically calculated the amount of liquidated debt based on its evaluation of PNC Bank's claims and the parties' agreements.[53]

Third, Mr. Cannon argues that his unliquidated claims and defenses against PNC Bank preclude a calculation of his liquidated debts.[54] Mr. Cannon theorizes that any of his defenses, claims, and offsets should have been deducted from PNC Bank's claim.[55] But because his claims against PNC Bank are impossible to quantify without a jury verdict, Mr. Cannon maintains that the debt that it asserts must be unliquidated.[56] Mr. Cannon also contends, without factual support, that future discovery may show that the owners of his debt have been paid in whole or in part.[57] Simply put, Mr. Cannon insists that calculation of his debt at this stage of the proceeding is premature and must await the "future discretionary determination of factual issues by the appropriate fact finders in a Court of competent jurisdiction."[58] The court disagrees.

---

[51] "When a proof of claim is executed and filed in accordance with the provisions of Rule 3001 (including Official Form 10), it 'constitutes prima facie evidence of the validity and amount of the claim.'" *In re Kirkland*, 572 F.3d 838, 840 (10th Cir. 2009) (quoting Fed. R. Bankr. P. 3001(f)).

[52] *See, e.g.*, *In re Pearson*, 773 F.2d 751, 756 (6th Cir. 1985); *In re Scovis*, 249 F.3d 975, 983 (9th Cir. 2001); *In re Barcal*, 213 B.R. 1008, 1015 (B.A.P. 8th Cir. 1997); *cf. United States v. Verdunn*, 89 F.3d 799, 802 n.9 (11th Cir. 1996).

[53] *In re Adams*, 373 B.R. 116, 120 (B.A.P. 10th Cir. 2007) ("The key factor for determining whether a debt is liquidated or unliquidated is whether the debt is subject to a simple mathematical computation or ascertainable by reference to an agreement."); *In re Glance*, 487 F.3d 317, 321 (6th Cir. 2007).

[54] Dkt. No. 20, at 26-30. Mr. Cannon's emphasis on his own claims suffers from the fact that he appears to have omitted these claims or offsets from Schedules. Trustee App. 48.

[55] Dkt. No. 20, at 26.

[56] Dkt. No. 20, at 27-29 (discussing a number of claims, including but not limited to fraud, negligence, intentional infliction of emotional distress, breach of fiduciary duty, breach of contract, and statutory claims). Mr. Cannon also argues that a quiet title action is necessary to see whether the trust deed is null and void. *Id.* at 30.

[57] Dkt. No. 20, at 30.

[58] Dkt. No. 20, at 27.

As the court has already discussed, the approach adopted in this case ensures that a bankruptcy court is able to properly evaluate eligibility at the outset of the case.[59] Mr. Cannon's approach would increase the cost and decrease the efficiency of Chapter 13 reorganizations.[60] It would also place control over eligibility in the hands of a debtor, who would only need to assert that the creditor's claim was disputed and then vaguely describe a counterclaim or offset in order to survive a Section 109(e) motion to dismiss.[61] Even if the existence of an offset was relevant to a court's analysis of whether a debt has been liquidated in some cases,[62] that should not be the case here, where Mr. Cannon has failed to provide an adequate factual basis for the court to evaluate the viability and value of his claims against PNC Bank.[63] In sum, Mr. Cannon's theory, at least as applied to these facts, would not only allow a debtor to easily circumvent statutory limits by pointing to vague, uncertain, and ambiguous claims, but would also prevent a court from making an early eligibility determination whenever the debtor raises a mere possibility of disputed facts.[64] This is hardly consistent with language and purpose of Section 109(e).[65] And in fact, the ramifications of Mr. Cannon's approach underscore why a majority of courts have

---

[59] *See In re Rottiers*, 450 B.R. 208, 216 (Bankr. D.N.M. 2011) (discussing policy considerations).

[60] *Id.*; *In re Arcella-Coffman*, 318 B.R. 463, 476-77 (Bankr. N.D. Ind. 2004) (explaining purpose behind the eligibility inquiry and distinguishing it from the rigid requirements of a summary judgment proceeding).

[61] *In re Adams*, 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007) (expressing concern that a full trial on the merits prior to an eligibility determination could lead to forum shopping); *In re Mazzeo*, 131 F.3d 295, 305 (2d Cir. 1997); *United States v. Verdunn*, 89 F.3d 799, 802-03 (11th Cir. 1996).

[62] *In re Adams*, 373 B.R. 116, 121 (B.A.P. 10th Cir. 2007).

[63] *See In re Nicholes*, 184 B.R. 82, 90 (B.A.P. 9th Cir. 1995) (acknowledging that nature of dispute over liability may, in some cases, cause a claim to be classified as unliquidated); *In re Denaeyer*, No. BK11-43089-TLS, 2012 WL 1605555 (Bankr. D. Neb. May 8, 2012) (concluding debtor's tort claim could not be used to "chip away" at a liquidated debt).

[64] This is especially troubling where Mr. Cannon admits to the existence of the claims for the purpose of receiving a discharge under Chapter 13, while at the same time denying their existence. *See* Trustee App. 110-11.

[65] *See In re Pearson*, 773 F.2d 751, 756 (6th Cir. 1985).

concluded that a mere "dispute regarding liability on a claim is insufficient to render a claim unliquidated."[66]

In sum, the court concludes that Mr. Cannon's noncontingent, liquidated, and secured debt exceeds the statutory limits for Chapter 13 eligibility. Accordingly, the court must affirm the bankruptcy court's dismissal of Mr. Cannon's case.

## V. DUE PROCESS

Finally, Mr. Cannon briefly argues that Section 109(e) is arbitrary and capricious, which results in a substantive denial of due process.[67] The court disagrees.

As a preliminary matter, Mr. Cannon's briefing of the issue lacks authority and substance. Mr. Cannon lifts out of context language from a Sixth Circuit decision discussing the purpose of Chapter 13 proceedings.[68] But Mr. Cannon fails to identify or articulate a plausible substantive property interest or provide a persuasive explanation of how statutory limits on an individual's eligibility for Chapter 13 are arbitrary and capricious. In some respects, his argument appears to be directed at equal protection, an issue that does not appear to have been raised below. It is not the proper province of this court to find supporting authority for Mr. Cannon's due process theory and then articulate a comprehensive, legally sufficient argument on his behalf. For that reason, his due process challenge must fail.[69]

---

[66] *In re Lambert*, 43 B.R. 913, 919 (Bankr. D. Utah 1984) (rejecting argument that a dispute over a second or independent debt asserted as an offset reduced the amount of the original debt).

[67] Dkt. No. 20, at 37-38.

[68] Dkt. No. 20, at 37-38 (citing *In re Pearson*, 773 F.2d 751, 756 (6th Cir. 1985)).

[69] *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002), *modified on reh'g*, 319 F.3d 1207 (10th Cir. 2003); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).

Furthermore, as the Supreme Court has recognized in other contexts, an individual does not have a "constitutional or fundamental right to a discharge in bankruptcy."[70] And even if an individual possessed a recognizable property interest in a Chapter 13 reorganization, the court would nevertheless conclude that the statutory limits contained in Section 109(e) are neither arbitrary nor capricious because these limits are balanced between the competing concerns of expanding the availability of Chapter 13, while at the same time ensuring that the number of filings would not endanger efficient and effective resolution of Chapter 13 petitions.[71] In short, the bankruptcy court correctly concluded Section 109(e) was neither arbitrary nor capricious, and that a rational basis supported the debt-limit cap.[72]

## CONCLUSION

For the reasons stated, the judgment of the bankruptcy court is **AFFIRMED**. The case is **REMANDED** for further proceedings consistent with this Order. The Clerk of Court is directed to close the case.

**SO ORDERED** this 23rd day of October, 2014.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[70] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (internal quotation marks omitted); *United States v. Kras*, 409 U.S. 434, 445-46 (1973).

[71] *Cf. F.C.C. v. Beach Commc'ns, Inc.*, 113 S. Ct. 2096, 2101 (1993) (concluding rational basis inquiry for economic or social legislation ended when "plausible reasons" supported the enactment).

[72] Trustee App. 113-16 (discussing reasons supporting debt-limit caps and a court's obligation to enforce plain and unambiguous statutory language); *see also In re Butcher*, 189 B.R. 357, 372 (Bankr. D. Md. 1995), *aff'd*, 125 F.3d 238 (4th Cir. 1997).